**SEALED** 

2022 JAN 25 PM 3:36

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | UNDER SEAL |
| v. ) | |
| ) | CRIMINAL NO. DLB 22cr15 |
| VERNON JERELL HARPER, ) | |
| a/k/a "Diddy" ) | (Conspiracy to Distribute Fentanyl and |
| ) | Cocaine, 21 U.S.C. § 846; Possession |
| ) | with Intent to Distribute Fentanyl and |
| Defendant. ) | Cocaine, 21 U.S.C. § 841) |
| ) | |

## INDICTMENT

### COUNT ONE

**(Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances)**

The Grand Jury for the District of Maryland charges that:

**Introduction: Relevant Persons and Entities**

At all times relevant to this Indictment, unless otherwise stated:

1. Defendant Vernon Jerell **HARPER** was a resident of Pikesville, Maryland.

2. **HARPER** was employed as a "Violence Interrupter" by Safe Streets Baltimore, a violence reduction program operated by Catholic Charities in collaboration with the Baltimore City Department of Health and the Baltimore City Mayor's Office of Neighborhood Safety and Engagement. **HARPER** was assigned to Safe Streets Baltimore's Brooklyn-Curtis Bay location.

3. According to Safe Streets Baltimore's web site, Safe Streets Violence Interrupters "spread anti-violence messages and encourage positive changes in individual behavior."

4. According to Safe Streets Baltimore's web site, Safe Streets Baltimore locations "spread the Safe Streets message via credible messengers."

5. According to Catholic Charities' web site for Safe Streets Baltimore locations in Sandtown-Winchester and Brooklyn-Curtis Bay, Safe Streets employees are "credible messengers and healthcare workers."

## The Conspiracy

6. Beginning in or about July 2020 and continuing through on or about October 28, 2020, in the District of Maryland and elsewhere, the defendant,

**VERNON JERELL HARPER,**

did knowingly and willfully combine, conspire, confederate and agree with others known and unknown to the Grand Jury to knowingly and intentionally distribute and possess with intent to distribute a quantity of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, as well as a quantity of mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Section 841 of Title 21, United States Code.

## Manner and Means of the Conspiracy

7. It was part of the conspiracy that **HARPER** used his residence in Pikesville, Maryland as a stash location for fentanyl and cocaine.

8. It was part of the conspiracy that **HARPER** kept drug paraphernalia and packaging material inside his residence in Pikesville, Maryland. The drug paraphernalia and packaging material included a sifter, a pill press, gelatin capsules, and the cutting agent Mannite.

9. It was part of the conspiracy that **HARPER** used a cellular telephone to exchange text messages with drug customers, including drug redistributors, in which **HARPER** arranged to sell the drug customers narcotics.

10. It was part of the conspiracy that **HARPER** traveled from his residence in Pikesville, Maryland to the Brooklyn neighborhood of Baltimore City, where **HARPER** was employed by Safe Streets Baltimore as a "Violence Interrupter," in order to sell narcotics to customers.

## Overt Acts in Furtherance of the Conspiracy

11. On or about October 23, 2020, **HARPER** received a text message from Co-Conspirator 1, in which Co-Conspirator 1 asked **HARPER** to provide him with a quantity of narcotics on consignment. Co-Conspirator 1 wrote: "Can ya front 11? PayDay tomorrow."

12. On or about October 24, 2020, **HARPER** received a text message from Co-Conspirator 1, in which Co-Conspirator 1 asked **HARPER** to provide him with a quantity of narcotics and promised to pay **HARPER** for an outstanding drug debt. Co-Conspirator 1 wrote: "After work, Id like to get '25' and square up[.]" **HARPER** responded, "Ok."

13. On or about October 26, 2020, **HARPER** received a text message from Co-Conspirator 1, in which Co-Conspirator 1 asked **HARPER** whether he was coming to Brooklyn that day. **HARPER** responded that he was. Co-Conspirator 1 replied, "I'll take '25' after work please." **HARPER** responded, "Ok."

14. On or about October 27, 2020, **HARPER** possessed with intent to distribute fentanyl and cocaine at his residence in Pikesville, Maryland. **HARPER** also possessed drug

paraphernalia and packaging material, including a sifter, a pill press, empty gelatin capsules, and the cutting agent Mannite. **HARPER** also possessed $558 in cash.

15. On or about October 28, 2020, **HARPER** received a text message from Co-Conspirator 1, in which Co-Conspirator 1 complained about a quantity of narcotics that **HARPER** had previously sold him. "Hate to say this," Co-Conspirator 1 wrote, "but ya basicly [sic] gave me 25 empty's [sic] 4 completely empty 21 with hardly nothing at all."

21 U.S.C. § 846

## COUNT 2

**(Possession With Intent To Distribute Cocaine and Fentanyl)**

The Grand Jury for the District of Maryland charges that:

On or about October 27, 2020, in the District of Maryland, the defendant,

**VERNON HARPER, a.k.a. Diddy,**

knowingly and willfully possessed with intent to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance; and a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

21 U.S.C. § 841.

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the Defendant that the United States will seek forfeiture as part of any sentence in accordance with 28 U.S.C. § 2461(c) and the other statutes cited herein, in the event of the Defendant's conviction(s).

### Narcotics Forfeiture

2. Pursuant to 21 U.S.C. § 853(a), upon conviction of any offense(s) in violation of the Controlled Substances Act, as alleged in Count One and Count Two, the Defendant shall forfeit to the United States of America:

   a. any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such offense(s); and

   b. any property used, or intended to be used, in any manner or part, to commit, or facilitate the commission of, such offense(s).

### Substitute Assets

3. Pursuant to Title 21, United States Code, Section 853(p), if any of the property described above as being subject to forfeiture, as a result of any act or omission by the Defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third person;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been comingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of the defendants up to the value of the property charged with forfeiture in the paragraphs above.

21 U.S.C. § 853
18 U.S.C. § 2461
Fed. R. Crim. P. 32.2(a)

_Erek L Barron_ PJM
EREK L. BARRON
UNITED STATES ATTORNEY

A TRUE BILL:

1/25/2022
Date

SIGNATURE REDACTED
Foreperson

7